UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRICIA CARNESE,<br>    Plaintiff,<br><br>v.<br><br>MERIDEN BOARD OF EDUCATION,<br>    Defendant | CIVIL ACTION NO.<br><br><br><br><br><br>JULY 28, 2020 |

## COMPLAINT

### Jurisdiction

1. The jurisdiction of this Court is founded upon 28 U.S.C. §1331 in that the action arises under the Americans with Disabilities Act, 42 U.S.C. §12101 et. seq., and C.G.S. §46a-60(b)(1)

### Venue

2. Venue is proper in this district under 28 U.S.C. § 1391(b) in that all of the events or omissions giving rise to the Plaintiff's claims occurred in this District and State, and the Defendant is a resident of the State in which this district is located.

### The Plaintiff

3. At all relevant times herein, the Plaintiff, Patricia Carnese (the "Plaintiff"), was an individual residing in the State of Connecticut.

### The Defendant

4. At all relevant times herein, the Defendant, Meriden Board of Education ("the Defendant") was a government entity with its principal office in Meriden, Connecticut.

## The Preliminary Statement

5. The Plaintiff seeks by this action to recover damages as a result of the Defendant's willful discrimination against her due to her disability in violation of the Americans with Disabilities Act 42 U.S.C. § 12101 et. seq., and in violation of C.G.S. §46a-60 et. seq.

6. On or about August 29, 2019, the Plaintiff filed a claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO") claiming illegal discrimination on the basis of disability, which was dual-filed with the EEOC.

7. On or about May 20, 2020, the CHRO issued a Release of Jurisdiction to the Plaintiff.

8. On or about May 21, 2020, the EEOC issued a Right to Sue letter to the Plaintiff.

9. The Plaintiff has complied with the time and procedural requirements of C.G.S. § 46a-60 et. seq.

## Facts

10. The Plaintiff has been a certified teacher in the State of Connecticut since 2001 and has always held the same Pre-K through 6th Grade teaching certificate.

11. The Plaintiff was hired by the Defendant in 2005 as a 1st Grade teacher.

12. In 2010, the Plaintiff applied for and successfully transferred to a 6th Grade teaching position at the Defendant's Lincoln Middle School ("Lincoln").

13. On or about February 9, 2018, while at Lincoln the Plaintiff was pushed into a wall by one of her students when she tried breaking up a fight between that student and another student.

14. In the months immediately following the incident, the Plaintiff was initially diagnosed by Go Health Urgent Care with a cervical strain, cervical radiculitis and radiculopathy, strain of the lumbar regions.

15. On or about May 10, 2018, Dr. Tarner B. Ghaly at the Neursurgery, Orthopedics & Spine Specialists, PC, diagnosed the Plaintiff with cervical degenerative disc disease, cervical facet syndrome, cervical severe stenosis at the C3-C4 level, and moderate to severe neuroforaminal narrowing at the C5-C6

16. Between June, 2018 and February, 2020, the Plaintiff attended over fifty (50) physical therapy sessions at Magna Physical Therapy & Sports Medicine Center LLC ("Magna PT") to receive treatment for her work-related injuries, including therapeutic exercises, neuromuscular reeducation, manual therapy, electrical stimulation, and vestibular therapy.[1]

17. On or about June 27, 2018, CIRMA sent the Plaintiff to the Hospital for Special Care for an independent neuropsychological evaluation lasting several hours, wherein Tim Belliveau, PhD, diagnosed the Plaintiff with an Adjustment Disorder, presented in the Plaintiff as "emotional distress" which her "job-related stressors probably contribute[d] to.".

18. On or about November 19, 2018 the Defendant required the Plaintiff to see an independent neurologist, Dr. Joshua Hasbani, for an Independent Medical Examination ("IME"). Dr. Hasbani diagnosed the Plaintiff at that visit with posttraumatic headaches, post concussive syndrome, cervical strain, cervical radiculopathy, and lumbar strain, and noted the Plaintiff should be allowed to leave work for the day if she got a headache.

---

[1] The only reason the Plaintiff stopped going is because the Defendant's workers' compensation third party administrator, Connecticut Interlocal Risk Management ("CIRMA"), refused to pay for any more visits, claiming they were no longer necessary after the Plaintiff had to take a short break from them in January, 2020, which was in fact due to the severe negative side effects she suffered after getting an ablation on the right side of her neck by her pain management specialist, Dr. Eric Grahling, again to treat her work-related injuries.

19. On or about November 27, 2018 the Plaintiff began seeing a neurologist, Dr. Hamid Sami, who diagnosed her with posttraumatic headache, posttraumatic cervicalgia, cervical muscular ligamentous sprain, and cervicogenic dizziness.

20. Despite the Plaintiff having taught her 6th Grade class without major interruptions since her injury, in our about the beginning of May, 2019, the Plaintiff was called into an unnoticed meeting with Assistant Superintendent, Louis Bronk ("Bronk"), and the Plaintiff's union representative, to discuss the Defendant's intention to transfer the Plaintiff to Kindergarten for the upcoming school year and that the Defendant already had someone to fill her 6th Grade position.

21. On or about May 8, 2019, after Dr. Sami performed another neurological evaluation on the Plaintiff, the Plaintiff emailed Bronk Dr. Sami's letter, which recommended that "[d]ue to [the Plaintiff's] ongoing treatments, it is preferred for her to stay in the same teaching position and working environment instead of going through position changes and learning new skills since it may slow down her neurological recovery."

22. On or about May 10, 2019, the Plaintiff's physical therapist at Magna PT wrote to the Defendant and CIRMA that the Plaintiff had the following restrictions: avoiding highly physical or complex situations requiring a lot of divided concentration.

23. On or about May 15, 2019, Bronk sent the Plaintiff a letter from the Defendant's Superintendent, Dr. Mark Benigni ("Superintendent Benigni"), stating she was being transferred to Kindergarten for the 2019-2020 school year pursuant to his "superintendent discretion" under the Plaintiff's Collective Bargaining Agreement.

24. On or about June 25, 2019, after visiting the Kindergarten classroom to assess its ability to meet her physical and mental limitations, the Plaintiff requested Superintendent

4

Benigni reconsider his decision to transfer her since it went against her neurologist's and physical therapist's recommendations.

25. Despite the §10.5(c) of the CBA providing that "transfers between schools <u>will</u> be voluntary..." and that "[a]ll internal candidates for each internal job posting shall be offered an interview" (for which the Plaintiff was never interviewed), on or about July 12, 2019, Superintendent Benigni denied the Plaintiff's reconsideration request without explanation, although the Defendant had not yet posted the Plaintiff's position externally.

26. On or about July 18, 2019, the Defendant posted a job opening for the Plaintiff's 6th Grade teaching position externally.

27. On or about August 2, 2019, Bronk received Dr. Hasbani's July 11, 2019 Second IME Report from CIRMA adjuster Gail McClellan ("McClellan"), who advised Bronk that Dr. Hasbani opined the Plaintiff should not be teaching Kindergarten.

28. On August 10, 2019, the Plaintiff submitted an application to the Defendant's job opening for her 6th Grade teaching position, for which she never received an interview.

29. On August 13, 2019, Bronk received Dr. Hasbani's August 8, 2019 Addendum to his July 11, 2019 IME Report, which reiterated that the Plaintiff "...should be allowed to continue to work with 6th graders since this will provide a more suitable environment than kindergarten where sound sensitivity is more likely to worsen her condition."

30. Later that same day, Bronk emailed McClellan in response to the August 8, 2019 Addendum that, "we do not agree with what is written...we do not agree with this assessment....Please advise of what our options are."

31. On August 15, 2019, the ultimately-successful candidate, who had not applied as an "internal candidate", Ms. Susan Carr, who was also a current teacher for the Defendant,

submitted an incomplete bare-bones application for the Defendant's job opening for the Plaintiff's 6th Grade teaching position as an outside candidate.

32. The Principal of Lincoln at the time, John Kuckel, interviewed Ms. Carr the same day, August 15, 2019.

33. The following morning, August, 16, 2019 at 8:07am, Ms. Carr emailed the maintenance department that she needed boxes because she was moving classrooms.

34. On or about August 26, 2019, Bronk sent the Plaintiff a letter threatening her with termination if she did not show up for professional development on August 27, 2019 or the first day of school on August 28, 2019.

35. On or about September 11, 2019, after a visit with the Plaintiff Dr. Sami opined that the Plaintiff had suffered a "mental breakdown".

36. On or about September 16, 2019, the Plaintiff began seeing Dr. Grahling, a pain management specialist, who diagnosed her with facet syndrome, cervical spondylosis, cervicalgia and depression with anxiety as a result of her work-related injuries.

37. On or about September 26, 2019, the Plaintiff began regularly seeing a therapist, Dr. Jennifer Charbonnier, who diagnosed her with "Acute Stress Reaction" as a result of the Plaintiff's "ongoing dispute" with the Defendant.

38. On or about November 11, 2019, after Dr. Sami performed another neurological evaluation on the Plaintiff, the Plaintiff emailed Bronk Dr. Sami's letter which reiterated that it was his recommendation the Plaintiff stay at her 6th Grade teaching position and that transferring her to Kindergarten may " impede " her neurological recovery.

39. Between January 4 and 6, 2020, the Plaintiff communicated with Bronk regarding her return to work to her Kindergarten assignment, reiterating she and her doctors continued

to request as a reasonable accommodation that she be permitted to return to her 6th Grade teaching position, which Superintendent Benigni clearly had the power to allow.

40. On April 22, 2020, the Plaintiff emailed Superintendent Benigni, reaffirming her request to be accommodated by being reassigned to her 6th Grade teaching position at Lincoln for the upcoming 2020-2021 school year.

41. On April 30, 2020, Bronk replied to the Plaintiff, denying her request and informing her that she was again being assigned to Kindergarten for the upcoming schoolyear, without any regard for the Defendant's independent neurologist's and the Plaintiff's neurologist's medical opinions.

## FIRST COUNT

1-41. Paragraphs 1 through 41 are re-alleged and hereby made and incorporated by reference as Paragraphs 1 through 41 of the First Count as if fully set forth herein.

42. The Plaintiff is a member of a protected class based on her disability.

43. The Defendant discriminated against the Plaintiff on the basis of her disability in violation of the American with Disabilities Act 42 U.S.C. §12101 et. seq.

44. The Plaintiff was qualified and performing at a 'Proficient' rating for her 6th Grade teaching position with the Defendant.

45. The Plaintiff suffered an adverse employment action when the Defendant involuntarily transferred her from her 6th Grade position into Kindergarten for the 2019-2020 school year, as well as subsequently the 2020-2021 school year, which grade level the Plaintiff has not taught since 2003 while in a different Connecticut school district and despite her and the Defendant's neurologists' opinions that the transfer would impede and harm her recovery from her disabilities.

7

46. This constituted a severe professional trauma for the Plaintiff and was an ineffective accommodation to Plaintiff's known, diagnosed disabilities.

47. The circumstances surrounding the adverse employment action give rise to a reasonable inference of discrimination because the Defendant's imposition of the transfer from 6th grade, in which the Plaintiff had performed well, to Kindergarten, was in direct contradiction to the expressed and known professional medical opinions of both the Plaintiff's own and the Defendant's independently hired neurologists. As such, it was an ineffective accommodation attempt.

48. The Defendant has also entirely failed to engage in the interactive process regarding the reasonable accommodations and medical providers' recommendations against transferring the Plaintiff from 6th Grade to Kindergarten, which have been continually raised by Dr. Sami, Magna PT, and the Defendant's independent evaluating neurologist Dr. Hasbani since May, 2019.

49. The Defendant has instead failed to even consider any of the opinions proffered by the medical professionals referenced above, instead dismissing each and every one of them without any rational basis.

50. In fact, the refusal to accommodate Plaintiff by allowing her to teach her 6th Grade class was in direct violation of the Defendant's ADA duty to reasonably accommodate the Plaintiff.

51. As a result of the Defendant's conduct alleged above, the Defendant violated the ADA, 42 U.S.C. §12101 et. seq.

52. As a result of the Defendant's unlawful, willful discrimination, the Plaintiff has suffered and continues to suffer damages, including but not limited to severe emotional distress.

## SECOND COUNT

1-52. Paragraphs 1 through 52 are re-alleged and hereby made and incorporated by reference as Paragraphs 1 through 52 of the Second Count as if fully set forth herein.

53. The Plaintiff is a member of a protected class based on her disability.

54. The Defendant discriminated against the Plaintiff on the basis of her disability in violation of C.G.S. §46a-60(b)(1).

55. The Plaintiff was qualified for her 6th Grade teaching position with the Defendant.

56. The Plaintiff suffered an adverse employment action when the Defendant transferred her out of teaching 6th Grade and into Kindergarten for the 2019-2020 school year, as well as subsequently the 2020-2021 school year, despite the Plaintiff not having taught Kindergarten since 2003 in a different Connecticut school district.

57. The circumstances surrounding the adverse employment action give rise to a reasonable inference of discrimination because the Defendant's imposition of the transfer from 6th grade, where the Plaintiff had performed well at, to Kindergarten, was in direct contradiction to the expressed and known professional medical opinions of both the Plaintiff's own and the Defendant's independently hired neurologists. As such, it was an ineffective accommodation attempt.

58. The Defendant has also entirely failed to engage in the interactive process regarding the reasonable accommodations and recommendations against transferring the Plaintiff from 6th Grade to Kindergarten, which have been continually raised by Dr. Sami, Magna PT, and Dr. Hasbani since May, 2019.

59. The Defendant has instead failed to even consider any of the opinions proffered by the medical professionals referenced above, instead dismissing each and every one of them without any rational basis.

60. In fact, the refusal to accommodate Plaintiff by allowing her to teach her 6th Grade class was in direct violation of the Defendant's ADA duty to reasonably accommodate the Plaintiff.

61. As a result of the Defendant's conduct alleged above, the Defendant violated C.G.S. §46a-60(b)(1).

62. As a result of the Defendant's unlawful, willful discrimination, the Plaintiff has suffered and continues to suffer damages, including but not limited to severe emotional distress.

### THIRD COUNT

1-62. Paragraphs 1 through 62 are re-alleged and hereby made and incorporated by reference as Paragraphs 1 through 62 of the Third Count as if fully set forth herein.

63. The Plaintiff is a member of a protected class based on her disability.

64. The Defendant retaliated against the Plaintiff on the basis of her disability in violation of the American with Disabilities Act 42 U.S.C. §12101 et. seq. when the Defendant transferred the Plaintiff to Kindergarten in May, 2019 in spite of both the Plaintiff and Dr. Sami requesting reasonable accommodations of staying at the Plaintiff's 6th Grade teaching position.

65. The Defendant further retaliated against the Plaintiff on the basis of her disability when it sustained its decision to transfer the Plaintiff in July, 2019 despite the additional recommendation from Dr. Hasbani that the Plaintiff not be transferred and be permitted to stay at her 6th Grade teaching position.

66. The Defendant again retaliated against the Plaintiff on the basis of her disability when in January, 2020, Superintendent Benigni refused to consider the Plaintiff's continued request for a reasonable accommodation of being returned to her 6th Grade teaching position.

67. The Defendant again retaliated against the Plaintiff on the basis of her disability when, in April, 2020 the Defendant reaffirmed its decision to keep the Plaintiff at her transferred position for the upcoming 2020-2021 school year despite the continued recommendations from the Plaintiff's and Defendant's own neurologists and in spite of the Plaintiff reaffirming her request of a reasonable accommodation.

68. As a result of the Defendant's conduct alleged above, the Defendant violated the ADA, 42 U.S.C. §12101 et. seq.

69. As a result of the Defendant's unlawful, willful discrimination, the Plaintiff has suffered and continues to suffer damages, including but not limited to severe emotional distress.

## FOURTH COUNT

1-69. Paragraphs 1 through 69 are re-alleged and hereby made and incorporated by reference as Paragraphs 1 through 69 of the Fourth Count as if fully set forth herein.

70. The Plaintiff is a member of a protected class based on her disability.

71. The Defendant retaliated against the Plaintiff on the basis of her disability in violation of C.G.S. §46a-60(b)(7)(K) when the Defendant transferred the Plaintiff to Kindergarten in May, 2019 in spite of both the Plaintiff and Dr. Sami requesting reasonable accommodations of staying at the Plaintiff's 6th Grade teaching position.

72. The Defendant further retaliated against the Plaintiff on the basis of her disability when it sustained its decision to transfer the Plaintiff in July, 2019 despite the additional

recommendation from Dr. Hasbani that the Plaintiff not be transferred and be permitted to stay at her 6th Grade teaching position.

73. The Defendant again retaliated against the Plaintiff on the basis of her disability when in January, 2020, Superintendent Benigni refused to consider the Plaintiff's continued request for a reasonable accommodation of being returned to her 6th Grade teaching position.

74. The Defendant again retaliated against the Plaintiff on the basis of her disability when, in April, 2020 the Defendant reaffirmed its decision to keep the Plaintiff at her transferred position for the upcoming 2020-2021 school year despite the continued recommendations from the Plaintiff's and Defendant's own neurologists and in spite of the Plaintiff reaffirming her request of a reasonable accommodation.

75. As a result of the Defendant's conduct alleged above, the Defendant violated C.G.S. §46a-60(b)(7)(K).

76. As a result of the Defendant's unlawful, willful discrimination, the Plaintiff has suffered and continues to suffer damages, including but not limited to severe emotional distress.

WHEREFORE, the Plaintiff prays this Court:
a. Assumes jurisdiction of this action;
b. Reinstate the Plaintiff to her 6th Grade teaching position;
c. Award Plaintiff compensatory damages as a result of the Defendant's willful violation of the ADA, 42 U.S.C. §12101 et. seq.;
d. Award Plaintiff reasonable attorneys' fees under 42 U.S.C. §12205, and C.G.S. § 46a-60(b)(1);
e. Award costs of this action;
f. Award interest;
g. Grant such other and further relief as may appear to this Court to be equitable, just, and proper.

PLAINTIFF HEREBY REQUESTS A JURY TRIAL ON ALL COUNTS.

THE PLAINTIFF,
PATRICIA CARNESE

BY: *[signature]*
Michael E. Satti (CT 01311)
Michael E. Satti Attorney at Law, LLC
125 Eugene ONeill Drive, Suite 105
New London, CT 06320
Phone: (860) 599-5988
Fax: (860) 442-4420
Email: msatti@satti-law.com
-HER ATTORNEY-